F. S. MOSELEY & Co.,
Claimant Below, Appellant,

*vs.*

MIDLAND-ROSS CORPORATION,
Respondent Below, Appellee.

*Supreme Court On Appeal, March 28, 1962.*

Samuel R. Russell, of Morford, Young & Conaway, Wilmington, for appellant.

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, for appellee.

SOUTHERLAND, C. J., and WOLCOTT, Justice, and DUFFY, Judge, sitting.

SOUTHERLAND, Chief Justice: The action below is one under 8 *Del.C.* § 262 for the appointment of an appraiser to determine the value of the shares of stock of objectors to a merger of Industrial Rayon Corporation with the appellee, Midland-Ross Corporation. F. S. Moseley & Co., the appellant, filed a claim for appraisal in respect of certain shares. Midland-Ross objected, and the Vice Chancellor sustained the objection and disallowed the claim. Moseley appeals.

Moseley & Co. is a firm of stockbrokers in Boston. There were registered in its name more than 1200 shares of Industrial Rayon stock. On April 24, 1961, prior to the vote on the merger, it signed and sent to Industrial Rayon Corporation a letter enclosing a proxy voting 1200 of such shares against the merger. The letter reads:

"April 24, 1961

"Industrial Rayon Corp.
"660 Union Commerce Building
"Cleveland 1, Ohio

"Gentlemen:

"We are enclosing a proxy on which we have voted against the adoption of the Merger Agreement providing for the merger of Industrial Rayon Corporation into Midland-Ross Corporation as described in the Notice of Special Meeting and Proxy Statement dated March 28, 1961, in accordance with instructions from the holders of beneficial interest of 1200 shares stock registered in our name.

"Yours truly,

"F. S. Moseley & Co."

The merger was thereafter approved. On May 4, 1961, Moseley & Co. made written demand upon Midland-Ross for payment for the 1200 shares. Payment was refused, and Moseley filed its claim.

The applicable statute (8 *Del.C.* § 262(b)) provides in part as follows:

> "The corporation resulting from or surviving any consolidation or merger shall within 10 days after the date on which the agreement of consolidation or merger has been filed and recorded, notify each stockholder in any corporation of this State consolidating or merging, who objected thereto in writing and whose shares were not voted in favor of such consolidation or merger, and who filed such written objection with the corporation before the taking of the vote on such consolidation and merger, that the agreement has been filed and recorded."

This sub-section further provides that if any such stockholder shall within twenty days after the mailing of such notice demand payment for his stock the resulting or surviving corporation shall pay him the value thereof.

■ The written objection, filed prior to the merger is the necessary predicate of the right to appraisal. *Stephenson v. Commonwealth & Southern Corporation,* 18 *Del.Ch.* 91, 156 *A.* 215, *aff'd* 19 *Del.Ch.* 447, 168 *A.* 211; *Friedman v. Booth Fisheries Corporation,* 28 *Del.Ch.* 211, 39 *A.2d* 761.

■ The question here is therefore whether Moseley & Co. by its letter of April 24 can be said to have "objected [to the merger] in writing", within the meaning of § 262(b).

The Vice Chancellor (reversing his first holding in the matter) held that the latter did not rise above the statement of a letter transmitting a proxy in accordance with the instructions of the beneficial holders of the stock.

We think that he was right. The proxy transmitted with the letter did not constitute the written objection required by the statute. *Friedman v. Booth Fisheries Corporation,* above cited. This is so because the statute itself distinguishes between (1) the objection in

writing; (2) the voting (*i.e.,* the shares must not have been voted in favor of the merger) ; and (3) the demand for payment. Each of the three requirements must be complied with. Hence a negative proxy alone is not sufficient to comply with (1).

As for the letter, we think that it added nothing to the legal effect of the proxy. Claimant's reliance on *Wiswall v. General Waterworks Corporation,* 31 *Del.Ch.* 74, 66 *A.2d* 424, is misplaced. In that case a stockholder wrote a letter revoking his proxy and demanding its return. He added: "I will also use this opportunity to place my vote against the merger." No proxy, however, was enclosed. The Chancellor treated the letter as an inartistic objection by one not versed in draftsmanship, rather than as an invalid proxy.

This case is different. Here the broker, as the registered stockholder, was doing nothing more than performing for a customer the routine duty of voting the stock in accordance with the customer's instructions. It is probable that the sole purpose of the letter was to advise the management of this fact.

It is quite true, as we have said, that the objection in writing need not be made with all the formality which might be required if the objection resulted in a binding commitment. *Zeeb v. Atlas Powder Co.,* 32 *Del.Ch.* 486, 87 *A.2d* 123. But the objection must be made and it must be something more than a negative proxy or a mere letter of transmittal.

The judgment below is affirmed.